[Sac. No. 4900.   In Bank.—February 10, 1936.]

GENE HILL, Respondent, v. EDWIN H. FRICKE et al., Defendants; ARTHUR R. FRICKE, Appellant.

E. L. Webber, Mervin C. Lernhart and A. Q. Lomba for Appellant.

Fred A. Watkins for Respondent.

WASTE, C. J.—This is an appeal from a decree foreclosing a lien on real property.

The evidence discloses that during his lifetime Doctor Richard Fricke owned a ranch in Napa County, where he lived in retirement with his second wife, the defendant Pearl Huyck Fricke. Financial reverses, coupled with the fact that the ranch was not self-supporting, caused Doctor Fricke, over a period of time, to borrow various sums of money from his son, Edwin H. Fricke, one of the defendants herein. These sums were applied to the operation and maintenance of the ranch. At no time did the defendant and appellant, Arthur R. Fricke, also a son, advance any money to his father or contribute to the maintenance of the ranch. The relation of trust and confidence that existed between father and son caused Edwin to refuse his father's offer to transfer the property to him or to execute a mortgage thereon in his favor to secure him for the advances and loans so made. Subsequently, and after informing his wife and son Arthur of the advances made by Edwin, and of his desire and intention to impress a charge or lien on the ranch to secure same, Doctor Fricke executed a gift deed to the ranch, naming his wife and two sons as grantees. This deed was delivered to Edwin with the understanding that the other two grantees named therein should recognize the indebtedness of the grantor as a charge upon the property.

Upon the death of his father approximately three years thereafter, Edwin paid all bills incidental to the last illness and burial and continued to make advances for the maintenance and operation of the ranch. The appellant Arthur continued to contribute nothing. In view of developments, Edwin sought an agreement with his brother and stepmother, cograntees with him in the deed from his father, fixing the amount of the advances he had made, before and after the father's death, and declaring the total to be a lien against the real property. Accordingly, an itemized statement of moneys advanced by Edwin was prepared, totaling $11,938.74, and brought to an attorney's office by Gene Hill, plaintiff and respondent herein, who is the business associate of Edwin, who is blind. The appellant Arthur, who was informed that he was free to bring his attorney with him, and the defendant Pearl Fricke met with Hill at the attorney's office and

there executed a written agreement fixing the amount of Edwin's advances, in the amount above specified, and declaring the same to be a lien upon the ranch property, in accordance with the deceased grantor's desire, and specifically exempting Arthur and Pearl from personal liability. In other words, the land alone was made subject to the payment of the obligation. In its preliminary paragraphs, the written agreement recites that Edwin had made advances to his father for the maintenance and preservation of the ranch; that the father had intended and agreed that the advances should be a lien against the property; that the father subsequently transferred the property to his wife and two sons with the understanding that Edwin was to have a lien thereon for all advances, which were to be repaid "in the event of any sale or other disposition of the real property"; and that after the father's death Edwin continued to make advances for the maintenance of the property "with the understanding and agreement of the coowners, namely, Pearl Huyck Fricke and Arthur R. Fricke [appellant] that any and all of said advances should constitute a lien against said real property". The agreement then goes on to declare that in consideration of the matters so recited, the coowners do acknowledge and agree that Edwin has paid out to and for their use and benefit in and for the maintenance, operation and preservation of the property the sum of $11,938.74, which amount, without interest, "is and shall be and remain a lien against said real property until said amount is fully paid and discharged". The agreement further provides that Edwin shall "look to said real property for the satisfaction and discharge of said indebtedness". In the event of "any sale or any disposition of said real property" which does not realize a sufficient amount to pay said lien, it is provided the coowners are not to be held for any deficiency but in the event an excess remains it is to be divided equally among the parties.

Subsequently Edwin assigned his interest in the agreement to the plaintiff and respondent Hill, a close friend and business associate who has undertaken to care for Edwin for the remainder of his life. Hill thereupon commenced this action for the foreclosure of the lien and sale of the property. The defendant Arthur alone defended the suit, the others permitting their defaults to be entered. Judgment went for the

plaintiff and the property was sold by a duly appointed court commissioner at public auction. The plaintiff bid in the property for the amount of the judgment, subject to a prior encumbrance in favor of the Federal Land Bank of Berkeley. This appeal followed.

There is no merit in the contention that the lien and the written agreement declaring the same are unsupported by a consideration. A mere recitation of the facts constitutes sufficient answer to the point. Moreover, the agreement expressly states that many of the advances for the maintenance of the property were made after the father's death *"with the understanding and agreement* of the co-owners", included among whom was appellant, "that any and *all* of said advances should constitute a lien against said real property".

Appellant urges that the written agreement should "not be interpreted to be a mortgage" because at the time of its execution he was opposed to the giving of a mortgage. Respondent has never requested that it be construed as a mortgage. He refers to it as a lien and prays that it be enforced as such. Obviously, its effect is that of a mortgage without any right to a deficiency judgment. The sole purpose of the agreement was to charge the property in writing with the repayment of the sums advanced by Edwin. Section 2872 of the Civil Code defines a lien as "a charge imposed in some mode other than by a transfer in trust upon specific property by which it is made security for the performance of an act". A lien here existed within the statutory definition.

Urging that the maturity of the debt was contingent upon the happening of a future event, viz., a voluntary sale of the property, the appellant contends that this action to foreclose was prematurely instituted. The contention is based on the words "in the event of any sale or other disposition of the real property", appearing in the agreement. These words cannot properly be construed as words of limitation. They do not refer exclusively to a voluntary sale. In fact, to so interpret them would do violence to the phrase "or other disposition" of the property. The advances had been made and were immediately due and were payable upon a "sale or other disposition" of the property, whether voluntary or involuntary.

Other contentions, wanting in merit, do not require specific treatment. We have examined the entire record and find nothing that would warrant a reversal of the judgment. The equities are against the appellant.

The judgment is affirmed. The order denying a new trial being nonappealable, the purported appeal therefrom is dismissed.

Thompson, J., Shenk, J., Langdon, J., Curtis, J., and Seawell, J., concurred.